# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Clarence Perry,                    :          Case No. 1:05 CV 02737

      Petitioner,              :

vs.                                :          MAGISTRATE'S REPORT AND
                                              RECOMMENDATION

Christine Money,                   :

      Respondent.              :

This matter is before the undersigned Magistrate pursuant to Local Rule 72.2(b)(2)[1].  Pending is

Petitioner's Writ of Habeas Corpus filed pursuant to 28 U. S. C. § 2254[2] (Docket No. 1), Respondent's

Return of Writ (Docket No. 11) and Petitioner's Traverse to Respondent's Return of Writ (Docket No.

12).  For the reasons that follow, the Magistrate recommends that the Writ be denied.

## FACTUAL BACKGROUND

---

[1]

      The Clerk shall refer all *pro se* petitions for habeas corpus filed under 28 U.S.C. § 2254, provided such petition has first been reviewed by the Court pursuant to 28 U.S.C. § 1915(d) and Rule 4 of the Rules Governing § 2254 Cases and a decision has been made to require a response to the petition, to a Magistrate Judge for a Report and Recommendation as provided in Local Rule 72.1, *Duties of United States Magistrate Judges*.

[2]

      The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the constitution or laws or treaties of the United States.  28 U. S. C. § 2254 (a) (Thomson/West 2005).

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), in a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment in state court, the factual findings made by a state court in the direct appeal shall be presumed to be correct. *Keith v. Mitchell,* 455 F.3d 662, 666 (6th Cir. 2006) (*citing* 28 U.S.C. § 2254(e)(1) (2006)).  The facts of this case as set forth in the Court of Appeals of Ohio of the Eighth Judicial District, are as follows:

On July 30, 2003, around 11:00 p.m., Detective David Sims of the Cleveland Police Department received an anonymous tip from a resident that Clarence Perry was selling drugs again on East 66 at Belvidere. The detective was familiar with Perry because he had arrested him and found over 100 rocks of crack cocaine in his possession.  Detective Sims and Sergeant John Moran proceeded to the area in question, parked their vehicle up the street from where Perry was standing and began surveillance.  Through a pair of binoculars, Detective Sims observed Perry standing with two other males.  Sims watched as a third person approached the group and engaged them in conversation.  After the conversation, Perry went to the rear, passenger side door of his 1996 gold-colored Buick Roadmaster, which was parked on the street, and retrieved an item.  Perry gave the item to a heavy-set fellow, later identified as Cyril Baker, and Baker made a hand-to-hand transaction with the third person.  Based on his experience as a police officer, Sims believed a drug transaction had just occurred.  Sims observed another similar transaction; he then called in an undercover police detective, Kimberly Rudolph, to attempt a controlled drug buy from Perry and Baker.

Detective Rudolph arrived within five minutes and approached Perry and Baker in her undercover vehicle. Rudolph asked Baker "if she could get a 20," which is a way of asking in street terminology whether she could buy a rock of crack cocaine worth $20.  Baker told Rudolph to wait and advised he would go and check.  Detective Rudolph handed Baker a $20 bill, which had been marked and photocopied, and watched as Baker approached Perry and began talking.  Perry then approached Rudolph's vehicle to get a good look at her face.  Perry asked Rudolph to show her "tin badge," to which Rudolph replied she did not have one.  Perry stated to Baker and Rudolph that he knew Rudolph was a police officer and that she had previously arrested him.  Perry walked away from Rudolph's vehicle.

Baker spoke with Rudolph again, and Rudolph convinced Baker that she was not a police officer.  Baker then spoke with Perry again and, following this second conversation, Perry went to the rear, passenger-side door of his Buick Roadmaster, retrieved an item, and handed it to Baker.  Detective Rudolph heard Perry state to Baker that selling to her "did not feel right."  Baker gave Rudolph the item he obtained from Perry, which was later confirmed to be crack cocaine after laboratory testing.  Baker then asked Rudolph for another $5.  Baker turned back towards Perry to reconfirm the price of the crack rock; Perry replied, "at least $25."  Rudolph handed Baker another marked and photocopied $20 bill and waited for Baker to get her change.

In the meantime, another male appeared, later identified as Dan Belcher, who told Perry, Baker, and another male named Johnny Scott that the police were watching them from up the street.  Perry and Scott got into the Buick Roadmaster and drove away.  Baker fled the area on foot.  As the group was dispersing, Rudolph called Detective Sims and stated she had purchased drugs from Perry.

Detective Sims followed Perry's vehicle, losing sight of it for about a minute after it turned the corner onto Hough Avenue.  Sims sighted Perry's vehicle parked in a lot on Hough next to a residence.  Perry and Scott were no longer in the vehicle, so Detective Sims set up surveillance on the vehicle and the house next to the lot.  After

about fifteen minutes, Sims observed Perry and Scott exiting the house and walking towards the street.  Detective Sims and Sergeant Moran apprehended and arrested both Perry and Scott.  Sims testified that, after the appellant was arrested, he asked him where his drugs were, to which the appellant replied, "Come on Sims, the last time I told you where my drugs was, you took all my stuff and kept my truck."  Detective Rudolph was called to the scene of the arrest and identified Perry as one of the men who had sold her crack cocaine.

Sims believed the gold Buick Roadmaster belonged to Perry because he had seen him driving it before. The license plates on the vehicle were run through the police computer, and the computer search confirmed that the vehicle belonged to Perry.  Perry's vehicle was inventoried by Detective Sims and Sergeant Moran before it was towed to the police impound lot, pursuant to Cleveland Police Department procedures.  Recovered from the vehicle were 34 individually wrapped white rocks, later confirmed by laboratory testing to be crack cocaine and weighing 14.22 grams.  The rocks were run through a small black pouch that was imprinted on one side with the words "I Love You Jesus" and a red heart.  The pouch was found in the rear passenger seat area of the vehicle.

When the appellant arrived at the police station, his personal effects were inventoried at the booking window; one of the marked and photocopied $20 bills was found in his possession, along with various denominations of cash totaling $857.  Cyril Baker, whose identity was unknown to the police at the time of Perry's arrest, escaped apprehension.

(Docket No. 11, Exhibit 10).

## PROCEDURAL BACKGROUND

During the September 2003 term, the Cuyahoga County Grand Jury indicted Petitioner on four criminal counts.  Count one charged Petitioner with possession of crack cocaine pursuant to OHIO REV. CODE § 2925.11, a felony in the second degree.  Counts two and three charged drug trafficking pursuant to OHIO REV. CODE § 2925.03.  Count two is a fifth degree felony and count three is a second degree felony.  Count four charged possession of criminal tools in violation of OHIO REV. CODE § 2923.24, a felony of the fifth degree (Docket No. 11, Exhibit 1).

Petitioner filed a motion to suppress on November 21, 2003 (Docket No. 11, Exhibit 3).  The motion to suppress was denied on January 15, 2004 (Docket No. 11, Exhibit 4).  The case proceeded to a jury trial on February 23, 2005.  Two days later, on February 25, 2004, the jury returned a verdict of guilty on all counts (Docket No. 11, Exhibit 7).  J On the same date, Judge Nancy A. McDonnell sentenced Petitioner to incarceration at Lorain Correctional Institution for a term of six years on counts one and three and six months on counts two and four.  The sentences were to run concurrently to each

other (Docket No. 11, Exhibit 7).

Petitioner filed a notice of appeal to the Eighth District Court of Appeals for Cuyahoga County, Ohio, on March 26, 2004 (Docket No. 11, Exhibit 8).  On July 2, 2004, Petitioner filed a brief which included eleven assignments of error[3] (Docket No. 11, Exhibits 9a and 9b).  The Court of Appeals affirmed the trial court's decision on January 6, 2005[4] (Docket No. 11, Exhibit 10).  Petitioner requested reconsideration (Docket No. 11, Exhibit 11).  The motion for reconsideration was denied on January 21, 2005 (Docket No. 11, Exhibit 12).  Petitioner then filed a memorandum in support of jurisdiction in the Ohio Supreme Court[5] (Docket No. 11, Exhibit 13).  The Supreme Court of Ohio denied leave to appeal

---

[3]

    (1) The trial court denied Petitioner his right to due process in denying his motion to suppress.  (2) The trial court denied his right to present a defense in striking the testimony of Cyril Baker and failing to admit Cyril Baker's testimony as a statement against interest.  (3) Petitioner was denied due process when the prosecutor failed to grant immunity to Cyril Baker.  (4) Petitioner was denied due process when he was required to testify before the appearance of a defense witness could be secured.  (5)  Petitioner was denied a fair trial by reason of cumulative error committed during the course of the trial.  (6) Petitioner was denied a fair trial and due process of law by reason of improper prosecutorial argument.  (7) Petitioner was denied due process when the trial court gave a special instruction to the jury concerning consideration of his testimony.  (8) Petitioner was denied due process when the trial court failed to properly instruct the jury.  (9) Petitioner was wrongfully convicted on evidence found on the backseat of an unoccupied vehicle.  (10) Petitioner was denied due process by being convicted of a felony of the second degree in counts one and three. (11) Petitioner was denied due process of law when he was sentenced to more than a minimum sentence for a felony of a second degree.

[4]

    The Court of Appeals (1) affirmed Petitioner's conviction, (2) determined that the arrest was lawful; therefore, the motion to suppress lacked merit, (3) Cyril Baker invoked the Fifth Amendment right against self incrimination; thus, he was unavailable pursuant to FED. R. EVID. 804(a), (4) Cyril Baker was foreclosed from error that is the result of his own invitation or inducement, (5) The trial court did not err in striking Cyril Baker's testimony, (6) Petitioner failed to establish the requisite elements of "FED. R. EVID. 803(B)(3)", (7) the trial court did not have authority to grant Cyril Baker immunity, (8) the outcome of the trial would not have been different if Petitioner had not testified or if he had testified after Johnny Scott testified, (9) the prosecutor's conduct was not improper as to the affect of Petitioner's right to a fair trial (10) the special jury instructions as they relate to the testimony of police officers simply restated the obvious, (11) there was no error in the instruction to the jury on the terms of constructive possession, (12) it was clear from the instructions provided, that the jury knew that the applicable legal standard to apply to the entire charge was "knowingly", (13) there was sufficient evidence in the record to show that Petitioner had constructive possession over the crack cocaine that was found in his vehicle, (14) the testimony of the Cleveland Police Department's scientific examiner that the substance sold to Detective Rudolph was crack cocaine was credible, (15) the sentence imposed by the trial court was supported by the record and not contrary to law and (16) the line of questioning pursued by the prosecutor was proper, Petitioner received a fair trial and the errors committed were not prejudicial.

[5]

    Petitioner argued that (1) he was denied due process when he and his vehicle which was lawfully parked on private property were seized and searched without a warrant, (2) he was denied the constitutional right to present a defense when his witness was instructed to plead the Fifth Amendment, (3) he was denied due process when the prosecutor refused to grant his

and dismissed the appeal as not involving any substantial constitutional question (Docket No. 11, Exhibit 15).

## **JURISDICTION**

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the grounds that he or she is in custody in violation of the constitution or laws or treaties of the United States. *Leslie v. Randle*, 296 F.3d 518, 521 (6th Cir. 2002) (*citing* 28 U.S.C. § 2254 (Thomson/West 2002)). The "custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." *Id.* (*citing Hensley v. Municipal Court,* 93 S. Ct. 1571, 1574-1575 (1973)).

Petitioner was convicted in the Cuyahoga Court of Common Pleas and he is incarcerated at Marion Correctional Institution (Docket No. 1, p. 1). Petitioner satisfies the "in custody" requirement for habeas jurisdiction. Next, he alleges that the trial court violated his rights to the constitutional protections of the Fourth[6], Sixth[7] and Fourteenth[8] Amendments. Such allegations are alleged violations

---

witness immunity, (4) he was denied due process when he was required to testify prior to Johnny Scott, (5) he was denied a fair trial when cumulative errors were heard during the course of the trial, (6) he was denied a fair trial in which the prosecution improperly expressed his opinion and appealed to the jury's passion and prejudice, (7) he was denied due process when the trial court informed the jury to give special consideration to his testimony, (8) he was denied due process when the jury was improperly instructed, (9) he was denied due process when he was convicted of possessing drugs that were in the backseat of an unoccupied automobile, (10) he was denied due process where the evidence did not show that the controlled substance was crack cocaine, and (11) he was denied due process when he was sentenced to more than the minimum sentence based on factors neither alleged in the indictment nor found by the jury.

[6]

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV-Search and Seizure

[7]

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have

of constitutional protections.  Petitioner has satisfied the second prong of the requirement that the grounds for the writ be based on alleged violations of the constitution of the United States. Consequently, Petitioner has satisfied the requirements for habeas jurisdiction.

## **EVIDENTIARY HEARING**

Petitioner has not requested that the Court conduct an evidentiary hearing.  The granting of an evidentiary hearing in habeas review is governed by statute.

Pursuant to 28 U. S. C. § 2254(e)(2):

(1)  If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on claims unless the applicant shows that:
(A)  the claim relies on
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

The restrictions upon holding an evidentiary hearing do not apply unless the applicant has failed to develop the factual basis of his or her claim.  In fact, this conditional clause is triggered only when the prisoner is at fault for failing to develop the factual record in state court, as when the applicant and his or her counsel has not exercised proper diligence, or created fault, in failing to develop the record. *McAdoo v. Elo*, 365 F. 3d 487, 500 (6th Cir. 2004) *cert. denied*, 125 S. Ct. 168 (2004).  Diligence for

---

compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.
U. S. CONST. amend. VI-Jury Trials

8

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws.*
U.S. CONST. amend. XIV, § 1

purposes of Section 2254(e)(2) depends upon "whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and purse claims in the state court." *Id.*

Here, Petitioner has not requested an evidentiary hearing and upon review of the record, the Magistrate finds that Petitioner's claims can be resolved from the pleadings in the record and that an evidentiary hearing is not required.

## STANDARD FOR HABEAS REVIEW UNDER SECTION 2254

In determining whether to issue a habeas writ, the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA"), 28 U. S. C. § 2241 et seq., govern the district court's review of a state court decision. *French v. Jones,* 332 F.3d 430, 435 (6th Cir. 2003) *cert. denied* 124 S. Ct. 581 (2003) (*citing Harpster v. Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997) *cert. denied*, 118 S. Ct. 1044 (1997)).  The AEDPA only provides habeas relief for a state prisoner in certain circumstances:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim-
  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

*Id.* (*citing* 28 U.S.C. § 2254(d) (2001)).

The Supreme Court decision of *Williams v. Taylor,* 120 S. Ct. 1495 (2000), clarified the meaning of operative clauses in Section 2254.  *Id.*  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *French* at 435 (*citing* 28 U. S. C. § 2241).

Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state

7

court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* Thus, the district court must look to see if the state court unreasonably applied a governing legal principle identified by the Supreme Court. *Id. (citing Williams*) stated that federal courts are to find "clearly established federal law" in the holdings of the Supreme Court, as opposed to its dicta, at the time of the relevant state court decision. *Id.* at 435-436 (*citing Williams* at 1523; *see also Harris v. Stovall,* 212 F.3d 940, 944 (6th Cir. 2000) *cert. denied*, 121 S. Ct. 1415 (2001)). In effect, Section 2254(d) permits the district court to grant petition for habeas corpus **only** when a state court decision is contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. *Davis v. Straub*, 430 F. 3d 281, 286 (6th Cir. 2005) *cert. denied*, 127 S. Ct. 929 (2007).

## <u>ANALYSIS</u>

Petitioner claims that he is in custody in violation of rights guaranteed him under the Fourth, Sixth and Fourteenth Amendments of the United States Constitution. Under the Fourth Amendment, Petitioner claims that the search of his car and person was illegal. Respondent contends that as Petitioner was provided an opportunity for full and fair litigation of his Fourth Amendment claim in the Ohio courts, this ground for relief is not cognizable in this habeas review.

Pursuant to the Sixth Amendment, Petitioner claims that he was denied a full and fair hearing when (1) he was required to testify out of order, (2) the testimony of Cyril Baker was stricken from the record, (3) the testimony of Detective Moran was deemed admissible, (4) the prosecutor engaged in acts of misconduct by improperly emphasizing evidence of Petitioner's bad character and misstating the evidence and (5) the jury was improperly instructed.

Petitioner's claims arising under the Fourteenth Amendment are: (1) the government failed to

prove his guilt beyond a reasonable doubt and (2) his sentence is inconsistent with the pronouncement in *Blakely v. Washington*, 124 S. Ct. 2531 (2004).

I.      Petitioner's Fourth Amendment Claims

Petitioner contends that there are Fourth Amendment violations relating to the search of his vehicle and person. Respondent argues that since Petitioner was provided an opportunity for full and fair litigation of this Fourth Amendment claim, this claim is not cognizable in habeas review.

The Supreme Court precedent dictates that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. *Stone v. Powell*, 96 S. Ct. 3037, 3052 (1976). A habeas petitioner may not seek habeas relief on a claim of illegal arrest if he or she has a full and fair opportunity to raise the claim in state court and presentation of the claim was not thwarted by any failure of the state court's corrective processes. *Machachek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000) c*ert. denied*, 121 S. Ct. 808 (2001) (*citing Stone*, 428 at 494-495).

In determining if the petitioner has a full and fair opportunity to present his or her claims, the court must first determine whether the state has a procedural mechanism which presents an opportunity to raise a Fourth Amendment claim. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 266 (1982). The court must then assess whether the presentation of that claim was frustrated by the failure to that procedural mechanism. *Id.*

In the hearing on the merits of motion to suppress, Petitioner argued that his arrest and search of his car were illegal. Petitioner did not address the search of his person during this hearing. Considering the totality of evidence, the trial court denied Petitioner's motion to suppress stating that there was a

9

count of possession of criminal tools which included the car.  After the arrest, the car was going to inventory because it was subject to forfeiture (Docket No. 11, Exhibit 22, p. 79).

Although Petitioner considers this litigation unfair, Petitioner cannot claim that he was denied "the opportunity" to litigate his Fourth Amendment claims.  Indeed, Petitioner had the opportunity to address the searches of his person and automobile in a suppression hearing before trial, by objection during trial and in his direct appeal.  Petitioner contests neither the existence or functioning of Ohio's procedural mechanisms.  The Ohio courts fully and fairly considered Petitioner's Fourth Amendment claim.  Accordingly, Petitioner cannot obtain habeas relief based on any illegal search or arrest claims.

II.    Petitioner's Sixth Amendment Claims

1.    *Objection to Order that Petitioner and Witness Johnny Scott Testified*

Petitioner contends that Johnny Scott failed to comply with the subpoena; consequently, the trial court demanded that Petitioner testify while awaiting the service of a warrant on Mr. Scott.  Johnny Scott appeared and testified on the following day.  In the meantime, the trial judge insisted that Petitioner testify.  Petitioner claims that his counsel objected to the presentation of Scott's testimony after his own and that the ruling of the trial court requiring that Petitioner testify immediately was improper and prejudicial.  Petitioner argues that counsel objected to the court's requirement that he testify before Johnny Scott.

Respondent contends that this issue is procedurally barred and therefore Petitioner is foreclosed from seeking review in this proceeding.  Specifically, Petitioner failed to make an objection contemporaneous to the time that he testified.  The court of appeals found that the failure to object constituted plain error since it was not brought to the attention of the trial court.  Such finding by the court of appeals constitutes support for Respondent's argument that Petitioner's third claim is

10

procedurally defaulted.

When deciding whether a claim has been procedurally defaulted, the first determination to be made is whether "there is a state procedural rule that is applicable to the petitioner's claim and [whether] the petitioner failed to comply with the rule." *Seymour v. Walker,* 224 F.3d 542, 554 -555 (6th Cir. 2000) *cert. denied* 121 S. Ct. 1643 (2000) (*citing Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986)). Next, consideration must be given to whether the procedural rule was actually enforced in the petitioner's case. *Id.* Finally, the court "must decide whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *Id.* Ohio has a rule that claims must be raised on direct appeal if possible; otherwise, res judicata bars their litigation in subsequent state proceedings. *Id.* (*citing State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), syllabus para. 8, 9).

The state procedural rule in Ohio dictates that the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). The trial court's evidentiary ruling will not be disturbed unless said ruling constitutes an abuse of discretion, i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). OHIO EVID. R. 103(A)(1) specifically provides as follows:

> (A)  Effect of Erroneous Ruling.  Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> > (1) Objection.  In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.

The Magistrate has reviewed the transcript.  When the judge demanded that Petitioner testify immediately, there was no objection made contemporaneous to Petitioner's testimony.  Instead, counsel

requested leave to convene the following day; however, once the judge denied the motion, counsel proceeded to argue that Cyril Baker's testimony was admissible.  At the conclusion of such arguments, counsel, without objection, proceeded with the direct examination of Petitioner (Docket No. 11, Exhibit 27, pp. 305-308).  The court of appeals also noted that Petitioner did not object to the admission of such evidence.  In fact, the court of appeals relegated the failure to object to the order of testimony as plain error.  Failure to raise the claim on the face of the record constitutes a procedural default.  Accordingly, the failure to register a timely objection to the trial court's mandate that Petitioner testify before Johnny Scott is res judicata and not subject to habeas review.

> 2.    *Testimony of Cyril Baker*

Petitioner claims that Cyril Baker's right to the Fifth Amendment privilege against self incrimination must yield to his right to present a defense.  In the alternative, Petitioner claims that the prosecutor should have granted Cyril Baker immunity from prosecution.

To support his claim that the state court's handling of Cyril Baker's Fifth Amendment privilege against self-incrimination was contrary to clearly established federal law, Petitioner refers the Court to the Sixth Circuit case of  *Davis v. Straub*, 421 F. 3d 365 (6th Cir. 2005).  Petitioner argues that although the opinion was vacated and superseded on reconsideration, the initial panel held that the invocation of the right to present testimony which may have been exculpatory, violated defendant's right to present a defense.  The court determined that the petitioner sought to have a witness testify as to the witness's prior statements which intended to exculpate the petitioner.  The prosecutor informed the petitioner before he took the stand that he was a suspect and that he should consult a lawyer.  The court permitted the witness to enter a blanket invocation against testifying without taking the stand and responding to individual questions.  *Davis v. Straub*, 430 F. 3d 281, 283 (6th Cir. 2005) *cert. denied*, 127 S. Ct. 929

12

(2007).

In contrast, Cyril Baker took the stand and during the course of his testimony, made several incriminating statements. The trial judge admonished Cyril Baker that his testimony was incriminating, advised him that he could not be compelled to testify against himself and assigned counsel. After consultation with counsel, Cyril Baker invoked the Fifth Amendment privilege to refrain from testifying against himself. The trial judge admonished the jury that Cyril Baker's testimony was stricken from the record (Docket No. 11, Exhibit 27, pp. 293-301).

The Magistrate finds that the review of *Davis* does not resolve the conflict between Petitioner's right to present a defense and Cyril Baker's right to assert the Fifth Amendment privilege after being advised by the court that such right exists. Accordingly, the state court's decision to strike Cyril Baker's testimony cannot be considered an act contrary to clearly established Supreme Court precedent.

In the alternative, Petitioner argues that the trial court and the prosecutor erred by failing to give Cyril Baker immunity from prosecution. Immunity is the government's ultimate tool for securing testimony that otherwise would be protected; unless immunity is conferred, however, testimony may be suppressed, along with its fruits, if it is compelled over an appropriate claim of privilege. *United States v. Blue*, 86 S. Ct. 1416, 1419 (1966). In Ohio, the trial court may only grant transactional immunity in any criminal proceeding in this state or in any criminal or civil proceeding brought pursuant to Sections 2923.31 to 2923.36 of the OHIO REV. CODE. Immunity may not be granted unless (1) the witness refuses to answer on the basis of his or her privilege against self-incrimination, (2) the prosecuting attorney makes a written request to order the witness to testify, and (3) the court advises the witness that he has transactional immunity. *State ex rel. Koren v. Grogan*, 68 Ohio St. 3d 590, 592, 629 N. E. 2d 446, 449 (1994).

13

By the time the issue of immunity arose during the trial, testimony had already been elicited that Cyril Baker had taken an active part in completing the sale of drugs to Detective Rudolph. Petitioner confirmed that Cyril Baker had participated in the sale of drugs to Detective Rudolph. Under these circumstances, the prosecutor had no legal or ethical duty to request immunity. There is no Supreme Court precedent that the prosecutor's failure to request immunity can be characterized as a deliberate effort to compromise the defense.

3.       *Testimony of Detective Moran*

Petitioner contends that the testimony of Detective Moran about the methods employed by drug traffickers was prejudicial.

OHIO R. EVID. 702 provides that if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto. Generally, police officers with the requisite qualifications are permitted to testify as both fact witnesses and expert witnesses. *State v. McKee,* 91 Ohio St. 3d 292, 295, 744 N. E.2d 737, 740 (2001).

Petitioner directs the Court's attention to *United States v. Vallejo,* 237 F. 3d 1008, 1015 (9th Cir. 2001). The district court admitted into evidence expert testimony of a special agent regarding the structure of drug trafficking organizations. The Ninth Circuit Court of Appeals found that the testimony was not relevant since the government never established a connection between Vallejo and a drug trafficking organization. *Id.*

*Vallejo* is clearly distinguishable from this case. The officer's testimony showed no connection between the crime charged and Vallejo's behavior. However, Officer Moran testified about what he observed on the night that Petitioner was arrested (Docket No. 11, Exhibit 24, pp. 178-180). Such

14

testimony about the significance of Petitioner's observed behavior with unknown males who appeared to be drug dealers was admissible.

  4.  *Alleged Prosecutorial Misconduct*

  Petitioner submitted a list of conduct and comments made by the prosecutor during the trial that he believes constitute misconduct.  First, the prosecutor inquired about Petitioner's prior convictions. Second, the prosecutor requested that Petitioner divulge the source of his lottery winnings.  Third, the prosecutor inquired into the arrest of April 16, 2003.  Fourth, the prosecutor misstated the evidence during closing, relied upon his opinion of Petitioner's guilt and used passion and prejudice to appeal to the jury.

  When reviewing claims of prosecutorial misconduct, the court must determine first whether the statements were improper.  If they appear improper, the court must determine if they were flagrant and warrant reversal.  *U.S. v. Stover*, 474 F. 3d 904, 2007 WL 220167, *9 (6th Cir. 2007) (*citing United States v. Tocco,* 200 F.3d 401, 420 (6th Cir. 2000) *reh'g denied*, 209 F. 3d 935 (6th Cir. 2000) (citations omitted)).  "To determine flagrancy, the standard set by the Sixth Circuit Court is:  1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused."  *Id.*

  Flagrantly improper remarks by the prosecutor require reversal.  However, if the prosecutor's remarks are not flagrant, then the court will only reverse "if proof of [the defendant's] guilt was not overwhelming, [the defendant] objected to the improper remarks, and the court failed to cure the error with an admonishment to the jury."  *Id.* (*citing United States v. Carroll*, 26 F.3d 1380, 1390 (6th Cir. 1994) (*citing United States v. Bess,* 593 F.2d 749, 757 (6th Cir. 1979)).

15

### A. Prior Convictions

Petitioner argues that the first instance of alleged prosecutorial misconduct occurred when the prosecutor asked him about his prior record. Petitioner argues that his answer was not automatically admissible under OHIO R. EVID. 609(A)(2). The court was required to determine the probative value of the evidence and whether it outweighed the danger of unfair prejudice, confused the issues or misled the jury.

OHIO R. EVID. 609 permits evidence of prior offenses only if they were punishable by imprisonment of more than one year, or they may be admitted to impeach the credibility of a witness but only if *the offense* involved dishonesty or a false statement. However, the evidence must be elicited through cross-examination of the witness sought to be impeached or by public record *during* cross examination. OHIO R. EVID. 609(A). While Rule 609(A) does not specify what information concerning a witness' prior convictions may be elicited for purposes of attacking the witness' credibility, under Ohio's rules a trial court possesses broad discretion under the rule to determine what testimony should be admitted. *State v. Wright,* 48 Ohio St.3d 5, 7, 548 N. E. 2d 923, 925 (1990), *reh'g denied*, 48 Ohio St. 3d 711, 550 N. E. 2d 484 (1990). By choosing to take the witness stand, a defendant places his or her credibility in issue, *see State v. Porter*, 14 Ohio St.2d 10, 11, 235 N. E. 2d 520, 521 (1968), and the trial court arguably has discretion under OHIO R. EVID. 609(A) to permit the state's line of questioning regarding defendant's prior felony conviction. *See State v. Campbell*, 13 Ohio App.3d 338, 339, 469 N. E. 2d 855, 856-857 (1983).

The Magistrate finds that even if the trial court erred by failing to specify on the record the probative value contemporaneous with Petitioner's testimony, there is no evidence that the trial court failed to engage in the weighing process before overruling the objection. The trial court included in the

16

instructions to the jury that Petitioner's testimony could only be considered for purposes of assessing credibility and veracity (Docket No. 11, Exhibit 31, p. 441).  The Magistrate is unable to find that this admonishment to the jury that Petitioner had been convicted of trafficking drugs or drug abuse, misled the jury or prejudiced Petitioner.

### B.  Lottery Winnings

During the course of his cross-examination, the prosecutor in this case asked Petitioner about the source of $877 recovered on his person at the time of his arrest.  The prosecutor in the suppression hearing, Dean Valore, asked Petitioner the same question.  Petitioner jokingly said that he had won the lottery; however, he explained that the money was derived from a myriad of sources, particularly gambling (Docket No. 11, Exhibit 28, p. 335).

The Magistrate finds that the prosecutorial interrogation about prior testimony was not improper. Petitioner has failed to show that the inquiry misled the jury particularly since the prosecutor deliberately permitted Petitioner sufficient latitude to explain what he meant by the term "lottery" (Docket No. 11, Exhibit 28, p. 353).  The prosecutor's inquiry was isolated and not mentioned again in his closing argument. Given the totality of circumstances surrounding the prosecutor's inquiry, the Magistrate cannot find that such attempt to clarify prior testimony constitutes misconduct.

### C.  Prior Arrest

The next instance of alleged misconduct occurred during recross-examination.  Petitioner concedes that he was arrested on April 16, 2003; however, he was not indicted and the case was dismissed. Petitioner argues that admission of his testimony was prejudicial.

OHIO R. EVID. 404(B) excludes evidence of other bad acts to prove the character of the accused, in order to show that the accused acted in conformity with his or her character on the occasion of the

crime; proof of other bad acts is admissible only to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OHIO R. EVID. 611 limits cross examination to the subject matter of the direct examination and matters affecting the credibility of the witness.

The evidence of the prior arrest was first introduced by Petitioner's counsel when he questioned Detective David Sims during the suppression hearing (Docket No. 11, Exhibit 21, pp. 22-23). Later at trial, Petitioner discussed the source of the lottery winnings during cross-examination. He proceeded to recount the details of his arrest by Detectives Rudolph and Sims on April 16, 2003, at a gambling house (Docket No. 11, Exhibit 28, pp. 354, 358). During redirect examination, Petitioner's counsel attempted to clarify the events leading up to the April 16th arrest (Docket No. 11, Exhibit 28, p. 358). The prosecutor continued the questioning about the arrest during recross examination (Docket No. 11, Exhibit 27, p. 361). The trial court overruled an objection and permitted the admission of such testimony.

The evidence of prior arrests was not offered to prove the character of the accused by the prosecutor. In each instance, the prosecutor's inquiry was limited to allowable yet relevant specific instances of conduct introduced by Petitioner during direct examination. Such inquiry was admissible as representative of matters affecting his credibility.

In the alternative, Petitioner argues that he was improperly precluded from presenting accurately that the changes from his April 16, 2003, arrest were dismissed. In support, Petitioner suggests that the Court consider the merits of *DePew v. Anderson*, 311 F. 3d 742 (6th Cir. 2002) *cert. denied*, 124 S. Ct. 270 (2003) .

The Magistrate finds that *DePew* is not persuasive that Petitioner was precluded from advising the jury that his April 16, 2003, arrest had been dismissed. *DePew* addressed the prosecutor's remarks at trial that the defendant's refusal to testify at sentencing violated the defendant's Fifth Amendment rights. *Id.*

18

at 750.  In this case, Petitioner's counsel, at a sidebar, argued that the journal entry dismissing the charges should be published to the jury.  The court took such argument under advisement.  However, during closing argument, Petitioner's counsel informed the jury that he had stipulated that the April arrest had been dismissed (Docket No. 11, Exhibit 30, p. 416).  The trial court did not preclude counsel for Petitioner from advising the jury that the charges had been dismissed.

### D.  Closing Argument

Petitioner claims that the prosecuting attorney unfairly prejudiced his case by misstating the evidence, asserting his personal opinion regarding his guilt and appealing to the jury's passion to obtain a verdict.  During closing, the prosecutor stated that "my version is pretty simple because it's what happened, it's the truth.  There's no magic here" (Docket No. 11, Exhibit 29, p. 429).  When recounting Detective Rudolph's testimony, the prosecutor merely reiterated the officer's testimony by stating that Detective Rudolph gave them (Baker and Petitioner) "two $20's because Mr. Perry said, Let's get out of here" (Docket No. 11, Exhibit 29, p. 429).

A prosecutor in closing argument may review the evidence that has been presented and may comment on the strength of the government's proof so long as these comments do not constitute improper authentication and are not made to inflame the jury.  *United States v. Reliford*, 58 F. 3d 247, 250 (6th Cir. 1995) (*citing United States v. Drake*, 885 F. 2d 323, 323-324 (6th Cir. 1989) *cert. denied,* 110 S. Ct. 852 (1990); *United States v. Carroll*, 26 F. 3d 1380, 1389 (6th Cir. 1994), *State v. Solivan,* 937 F. 3d 1146, 1151 (6th Cir. 1991)).  A prosecutor may not make statements designed to arouse the passions or prejudice of the jury.  *Viereck v. United States,* 634 S. Ct. 561, 563 (1943).  However, the prosecutor's primary interest in a criminal prosecution is that "justice shall be done."  *Lorraine v. Coyle,* 291 F. 3d 416, 445 (6th Cir. 2002) *cert. denied,* 123 S. Ct. 1621 (2003).  Consequently, the prosecutor has a duty to advance

19

the government's cause with force and persuasiveness. *Solivan*, 937 F.2d at 1150. This duty encompasses concerns beyond mere advocacy. *Id.* The prosecutor has a concomitant duty not to derogate from a fair and impartial criminal proceeding. *Id.* Unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible. *Id.* (*citing Henderson v. United States,* 218 F.2d 14, 19-20 (6th Cir. 1955), *cert. denied,* 75 S. Ct. 660 (1955)).

The Magistrate finds that the characterizations of the strength of the prosecutor's case were not improper. Thus, the statement that: "my version is pretty simple because it's what happened, it's the truth. There's no magic here" is within the bounds of prosecutorial advocacy. Further, the characterization of the evidence is not a misstatement of Detective Rudolph's testimony. She testified:

> They went to the rear of passenger side of his vehicle where they made a hand-to-hand transaction or exchange. He then came back to the car to give me, gave me the rock in exchange for the money. He said–I asked him, Was that it? He said no, I owed him some more money. And I said, How much? He said, At least another five. I told him that all I had was another 20. And he then yelled, Perry, how much is the rock? And he said, at least 25. So I gave him the 20. Mr. Perry told another individual to go get the car. He pulled the car around, they drove into the rear parking lot of the —where I was parked at the street and then cut through. I was waiting on them to come back with the change. And after they went in the parking lot, they all got into the vehicle and took off from the scene.

(Docket No. 11, Exhibit 26, pp. 214-215).

In his closing argument, the prosecutor merely paraphrased the meaning of the conversation Detective Rudolph had with Baker. Once she had given Baker two twenty dollar bills, Petitioner instructed a third person to get the Roadmaster, they fled the scene and failed to return with Detective Rudolph's change. The statement was not improper and it does not rise to the level of flagrancy required to show that Petitioner was prejudiced by the remark. Moreover, the court admonished the jury that the prosecutor's closing argument was not evidence (Docket No. 11, Exhibit 31, p. 437).

Further, Petitioner also contends that the prosecutor appealed to the jurors' passion and prejudice in urging the jury to convict out of a sense of duty and justice. The Magistrate finds that the prosecutor's closing argument does not attempt to appeal to community sentiment or embody an appeal to nationalism

20

as did the prosecutor in *Viereck*.  The statements: "The State of Ohio, however, is here to pursue justice" and "justice is when you right a wrong" merely extols the characteristics of and defines clearly established principles in our judicial system.  Later during the rebuttal closing argument, the prosecutor explained that justice required the jury to follow the law.  The prosecutor further explained that the interjection of sympathy, prejudice and bias did not constitute justice (Docket No. 11, Exhibit 30, p. 430).  Petitioner has not shown prejudice resulting from such comments.  Petitioner is not entitled to habeas relief based on these statements.

> 5.     *Jury Instructions*

Petitioner's contention that jury instructions were improper and unconstitutional is fourfold.  First, the court made reference to the Petitioner's testimony.  Such "singling out" of particular witnesses is now improper.  Second, the court improperly instructed the jury on constructive possession.  Third, the court used a "gist of the offense" language in defining purposely.  Fourth, the court instructed the jury that Petitioner could be held criminally liable for negligence.

> A.  *Consideration of Petitioner's Testimony*

Petitioner claims that the trial court erred when it instructed the jury that it should take into account his interest in the outcome of the case when considering his trial testimony.  Petitioner cites *State v. Group*, 98 Ohio St.3d 248, 781 N.E.2d 980 (2002) for the proposition that a trial judge may not single out a particular witness or group of witnesses and discuss their credibility.

The relevant language is:

> ....Just because he is the Defendant is no reason for you to disregard and set aside his testimony-- the weight it is entitled to receive, **taking into consideration his interest in the outcome of the case**, and apply to his testimony the same rules that you will apply to the testimony of all witness who appeared in this case.

(Docket No. 11, Exhibit 30, p. 441).

21

The Magistrate finds that the Ohio Supreme Court in *Group* addressed the propriety of giving special credibility instructions as they relate to the testimony of police officers, not to defendants taking the witness stand in their own defense. *Id.* at 264, 999. The Magistrate has reviewed Petitioner's testimony and finds that the trial court statement did not reflect on Petitioner's credibility but the weight to be attributed to his testimony. This statement does not entitle Petitioner to habeas relief.

### B.  *Constructive Possession*

Petitioner argues that the jury instruction provided by the court on "constructive possession" was equivalent to an amendment to the statute and the indictment. Petitioner claims that the sole instruction provided by the court should have included the statutory definition of the terms "possessed" or "possession" in OHIO REV. CODE § 2925.01(K). Such definition is as follows:

> "Possess" or "possession" means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.

The record reflects that the trial court orally instructed the jury as follows:

> Possess or possession means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found. Possession within the meaning of the law may be either actual or constructive.

> Actual possession. A person exercises actual possession when the person knows that s/he has the thing or substance on or about his possession.

> Constructive possession is also sufficient to prove possession. Possession may not be inferred from mere access to a thing or substance when he knowingly exercises, or is able to exercise, dominion or control over a thing or substance, or over the premises on which the thing or substance is found or concealed, even though the thing or substance is not in his physical possession.

> (Docket No. 11, Exhibit 30, p. 445).

Petitioner was charged with possession of crack cocaine. The Supreme Court of Ohio has

22

recognized that possession may be actual or constructive.  *State v. Wolery*, 46 Ohio St. 2d 316, 329, 3458 N. E. 2d 351, 361 (1976).  Constructive possession will be established when the accused is able to exercise dominion or control over the contraband.  *Id.*  In fact, constructive possession is sufficient for a conviction under OHIO REV. CODE § 2925.03.  *State v. Williams*, 117 Ohio App. 3d 488, 492, 690 N. E. 2d 1247, 1299-1300 (1996).  It may be proven by circumstantial evidence establishing defendant's proximity to readily usable drugs.  *State v. Barr*, 86 Ohio App.3d 227, 235, 620 N.E.2d 242 (1993).

A review of the jury instructions shows that they included the definition of "possess" or "possession" provided in OHIO REV. CODE § 2925.01(K).  However, because the charges necessarily included either actual or constructive possession of a controlled substance, the judge did not err in so instructing the jury.  Insofar as Petitioner objects to the inclusion of the language defining "constructive possession," this instruction was consistent with the facts of the case.  Although he denied any involvement in the transaction between Baker and Detective Rudolph, when arrested, the money given to Baker by Detective Rudolph to purchase drugs was found on Petitioner's person.  Petitioner's possession of this money permitted the jury to find that he constructively possessed the drugs sold to Detective Rudolph.

Petitioner fails to disclose anything in his argument that the jury instruction resulted in an improper amendment to the indictment.  The jury instructions are standard instructions that adequately and fairly recited the applicable law.  The Magistrate can find no error in the jury instruction on constructive possession.

### D.  Gist of the Offense Language

Petitioner argues that the trial court used a "gist of the offense" language in defining purposely.  Consistent with principles established in *State v. Wilson*, 74 Ohio St. 381, 393, 693 N. E. 2d 292, 305 (1996) *cert. denied,* 117 S. Ct. 129 (1996), such language dilutes the definition and is confusing where

purpose must be proven.

OHIO REV. CODE § 2901.22 defines "purposely":

"(A) a person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

The trial court rendered the following instruction on "purpose":

"When the central idea, essence, or gist of the offense is prohibition against or forbidding of conduct of a certain nature, a person acts purposely if his specific intention was to engage in conduct of that nature, regardless of what he may have intended to accomplish by his conduct."

Clearly the jury instruction given during the trial mirrors the statutory definition of "purposely". There is nothing that misstates the legal definition of purposely.  The court in *Wilson*, addressed the "gist of the offense" language in a murder prosecution which requires purpose.  74 Ohio St. 3d at 393, 659 N. E. 2d at 305.  The court rejected Wilson's claim that such language constituted plain error.  Considering Wilson's confession and other evidence, the jury could not have based its decision on the "gist of the offense" language.

The Magistrate finds that in the context of the statutory definition, the trial court provided adequate instructions on the essential element of purpose.

## E.  Standard of Review

Petitioner claims that when defining reasonable cause, the court instructed the jury to use a less stringent standard of criminal liability.  Specifically, the court provided the following instruction:

You must consider the conduct of persons involved and decide if their acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe that Clarence Perry intended to sell or resell crack.

The Magistrate finds that such language does not minimize the standard in criminal cases that guilt

24

must be proven beyond a reasonable doubt.  Instead, the standard described the degree of care or standard of conduct which an ordinarily careful and prudent juror would exercise in determining whether Petitioner had the intent to sell or resell crack cocaine.

### 6.  Fourteenth Amendment

Petitioner claims that (1) the degree of evidence produced by the prosecutor does not satisfy the burden of proof to sustain a finding that he committed the offenses beyond a reasonable doubt, (2) the evidence does not establish that the substance sold was crack cocaine and (3) his sentence is inconsistent with the pronouncement in *Blakely v. Washington.*

### A.  Burden of Proof

Petitioner argues that there was no physical evidence connecting him to the crimes charged.  The drugs were found in the backseat of an unoccupied vehicle parked behind an apartment building, there was no evidence that he touched, handled or transported the drugs, it was implausible that Petitioner would deal with Detective Rudolph knowing that she was a police officer, the testimony of Detective Rudolph conflicted with the testimony of Detective Moran and the cocaine taken from the car was not identified as crack.  This cumlative lack of evidence establishes that the jury could not have found him guilty beyond a reasonable doubt.

However, the Magistrate finds that upon review of the pleadings and transcript, there is sufficient evidence from which a reasonable jury could have found Petitioner guilty of possession and trafficking beyond a reasonable doubt.  At trial, Detective Sims testified that he watched Petitioner through binoculars and saw him retrieve an item from the rear passenger side door of his vehicle (Docket No. 11, Exhibit 26, p. 235).  Petitioner would deliver the item to a heavy set male who would transfer the item to a third party (Docket No. 11, Exhibit 26, p. 237).  Detective Sims was present when the marked $20 bill transferred to

25

the heavy set male was discovered on Petitioner's person (Docket No. 11, Exhibit 26, p. 244).  Detective Sims discovered thirty four rocks in the rear of a Buick Roadmaster owned by and licensed to Petitioner.

Detective Rudolph testified that she purchased cocaine from a heavy set male who obtained the cocaine from Petitioner.  Petitioner obtained the cocaine from the rear of the Buick Roadmaster.  Detective Rudolph also overheard Petitioner tell the heavy set male what to charge for the cocaine.  When instructed they were being watched, Petitioner got into the Buick Roadmaster and left the corner (Docket No. 11, Exhibit 25, p. 212-213).

Sergeant John Moran testified that at the booking window, the marked $20 bill Detective Rudolph used to purchase the cocaine and various denominations of bills totaling $857 were found on Petitioner's person (Docket No. 11, Exhibit 24, p. 185).

This evidence constitutes substantial evidence that Petitioner was in possession of and sold cocaine to Detective Rudolph.

### B.  Crack Cocaine

Petitioner argues that the expert established that the substance was cocaine, not crack cocaine.  Such contention is in error.

Scientific Examiner Tracy Kramer testified that the weight of the contraband marked as 1A was 14.22 grams (Docket No. 11, Exhibit 27, p. 272).  The weight of contraband marked as exhibit 1B totaled .36 grams (Docket No. 11, Exhibit 27, p. 273).  The rock-like substance inside bag 1A tested positive for crack cocaine (Docket No. 11, Exhibit 27, p. 274).  On cross-examination, Kramer acknowledged that the substance inside of bag 1B tested positive for cocaine (Docket No. 11, Exhibit 27, p. 276).  Although Kramer admitted that she marked both bags as cocaine, her unrefuted testimony was that exhibit 1A was crack cocaine.

26

### C. Constitutionality of Petitioner's Sentence

Petitioner argues that his sentence is unconstitutional in violation of *Blakely v. Washington,* 124 S. Ct. 2531 (2004).  In the alternative, Petitioner seeks an order voiding his sentence since the Supreme Court of Ohio found the state sentencing scheme unconstitutional in *State v. Foster*, 109 Ohio St. 3d 1, 845 N. E. 2d 470 (2006) *recon. denied*, 109 Ohio St. 3d 1408, 845 N. E. 2d 524 (2006).

The Supreme Court in *Blakely* did not address the constitutionality of the determinate sentencing scheme.  The Court did, however, invalidate the State of Washington sentencing scheme and found that the imposition of a sentence that exceeded the statutory maximum of the standard range for the offense based on the judge's finding that the defendant acted with deliberate cruelty, violated the Sixth Amendment right to trial by jury.  *Blakely*, 124 S. Ct. at 2533.  In other words, the statutory maximum that a judge may impose is not the maximum sentence that may be imposed after finding additional facts but the maximum that the judge may impose based on the facts reflected in the jury verdict or admitted by the defendant. *Id.* at 2537.

Under Ohio's sentencing scheme, the court shall impose a definite prison term that shall be two, three, four, five, six, seven or eight years for a felony of the second degree and six, seven, eight, nine, ten, eleven or twelve months for a felony of the fifth degree.  OHIO REV. CODE § 2929.14(A)(2) and (A)(4) (Matthew Bender & Company 2007).  Unlike the sentence imposed in *Blakely*, the trial judge in this case imposed a sentence for each offense that was within the statutory range.  Petitioner was sentenced to six years on both felonies of the second degree and six months on the felonies of the fifth degree.  Petitioner's sentence was within Ohio's statutory range.  The judge did not depart from these parameters.  The judge did not make nor was she required to make findings to support a departure from the sentences she imposed. Therefore Petitioner's claim that his sentence was violative of *Blakely* has no merit.

27

In the alternative, Petitioner seeks a finding that his sentence is *void ab initio* since the Supreme Court of Ohio determined that Ohio's sentencing scheme is unconstitutional pursuant to *State v. Foster,* 109 Ohio St. 2d 1, 845 N. E. 2d 470 (2006).  In *Foster,* the Ohio Supreme Court reviewed *Blakely* and compared it to the Ohio statutory sentencing scheme.  After examining Ohio's felony sentencing statutes, the Supreme Court determined that the *Blakely* offending portions of the sentencing statute should be stricken. ed.  *Foster*, at 29, 497.  The Supreme Court severed a variety of statutory sections in the Ohio sentencing scheme which were held unconstitutional and directed that this holding be applied to all cases pending review.  Sections 2929.14(B), (B)(2), (C), (D)(2)(b), (D)(3)(b) and 2929.41 were severed and excised in their entirety.  Such sections related to judicial findings that related to upward departures and findings necessary to increase the penalty.  The court left such findings to the trial court.  *Id.*

Constrained by the principles in *Foster,* the Magistrate finds that Petitioner's sentence was not based on the unconstitutional/excised sections of the statute.  In fact, *Foster* did not rewrite the statute but apportioned full discretion to the trial court to impose a prison term within the meaning of OHIO REV. CODE § 2929.14(A), not Section 2929.14(B), based on the jury verdict without the mandated judicial findings that *Blakely* prohibits.  Petitioner's sentences were based in their entirety on Section 2929.14 (A).  Thus, no basis exists for Petitioner's claim that his sentence should be deemed unconstitutional by *Foster*. Petitioner's claims that his sentence was based on an unconstitutional claim lacks merit.

## CONCLUSION

For the foregoing reasons, the Magistrate finds that Petitioner's claims lack merit and recommends that the Writ seeking habeas relief be denied.


/s/ Vernelis K. Armstrong
United States Magistrate Judge

28

Dated: 04/23/07

<u>NOTICE</u>

Please take notice that as of this date the magistrate's report and recommendation attached hereto has been filed.

Please be advised that, pursuant to rule 72.3(b) of the local rules for this district, the parties have ten (10) days after being served in which to file objections to said report and recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the sixth circuit court of appeals, in *United States v. Walters*, 638 f.2d 947 (6th cir. 1981) held that failure to file a timely objection to a magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.