IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Clarence Perry,                                    Case No. 1:05 CV 2737

                          Petitioner,              MEMORANDUM OPINION
                                                   AND ORDER

            -vs-
                                                   JUDGE JACK ZOUHARY
Christine Money,

                          Respondent.


        Petitioner Clarence Perry filed a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 asserting

the trial court violated his rights to the constitutional protections of the Fourth, Sixth and Fourteenth

Amendments. Under the Fourth Amendment, Petitioner claims the search of his car and person was

illegal.  Pursuant to the Sixth Amendment, Petitioner believes he was denied a full and fair hearing.

Finally, Petitioner argues his Fourteenth Amendment rights were violated when the Government

failed to prove his guilt beyond a reasonable doubt, and when the trial judge assigned an

unconstitutional sentence. This matter was referred to United States Magistrate Judge Vernelis

Armstrong for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). After receiving

memoranda in support of and in opposition to this Writ, Magistrate Armstrong filed a Report and

Recommendation containing findings of fact and conclusions of law.  The Magistrate concluded that

Petitioner's claims lacked merit, and recommended the Writ seeking habeas relief be denied.

        This action is before the Court on Petitioner's Objections to the Magistrate's Report and

Recommendation (Doc. No. 14).  In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir.

1981), and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the

Magistrate's findings to which Petitioner objects.  For the following reasons, the Court sustains Petitioner's objection to the Magistrate's recommendation relating to the constitutionality of his sentence.  As to Petitioner's other objections, the Court finds the Objections are not well taken and are denied.

## FACTS AND PROCEDURAL HISTORY

Plaintiff makes no objection to the Magistrate Judge's recitation of the facts.  Therefore, the facts and procedural history as stated in the Report and Recommendation filed April 23, 2007 (Doc. No. 14) are adopted in their entirety.

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, requires a federal habeas court to limit its analysis to the law as it was "clearly established" by the Supreme Court of the United States at the time of the state court's decision.  The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court has provided direction on the application of this standard in *Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "contrary to" prong, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially

2

indistinguishable facts. *Id.* at 405-406; *see also Bell v. Cone,* 535 U.S. 685, 694 (2002). This depends on the existence of a holding of the Supreme Court controlling the issue at the time of the relevant state court decision.  If a controlling holding does not exist, then the court must deny the petition.

The "unreasonable application" prong of § 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle" from the Supreme Court's decisions "but unreasonably applies that principle to the facts" of petitioner's case.  *Williams*, 529 U.S. at 413.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.  *Lockyer v. Andrade,* 538 U.S. 63.76 (2003) (*citing Williams,* 529 U.S. at 407). Rather, the state court's application must have been "objectively unreasonable." *Williams,* 529 U.S. at 409.

## I.    Petitioner's Fourth Amendment Claims

Petitioner claims his conviction was acquired using evidence gained pursuant to an unconstitutional search and seizure, and objects to the Magistrate's conclusion that Petitioner had a full and fair opportunity to litigate this issue in state court.  After a *de novo* review of the Record, the Court agrees with the Magistrate's conclusion and finds Petitioner was provided an opportunity to address the searches of his person and automobile in a suppression hearing before trial, by objection during trial and in his direct appeal.  Because the State provided Petitioner with a full and fair litigation of his claim, the Court cannot grant Petitioner habeas relief. *Stone v. Powell*, 428 U.S. 465, 494 (1976).

## II.    Petitioner's Sixth Amendment Claims

### 1.    *Requiring Petitioner to Testify Before Defense Witness*

Petitioner contends the ruling of the trial court requiring Petitioner to testify before witness Johnny Scott was improper and prejudicial, and he objects to the Magistrate's conclusion that he failed to make a timely objection rendering this issue not subject to habeas review.  After reviewing the trial transcript, the Court agrees with the Magistrate's recommendation, and finds  no objection was made contemporaneous to Petitioner's testimony.  The failure to raise a timely objection constitutes a procedural default and renders this issue not subject to habeas review.

### 2.    *Testimony of Cyril Baker*

Petitioner claims he was denied his right to present a defense when defense witness Cyril Baker proceeded to testify and the court interjected, causing the witness to assert his Fifth Amendment privilege. During Baker's testimony, Baker stated the Petitioner did not give him any drugs to sell, and that he (Baker) was the person who sold crack cocaine to the undercover Detective. At this point, the trial court stopped Baker's testimony after the prosecutor's objection and request that the trial court appoint an attorney for Baker to advise him of his rights. After speaking with a public defender, Baker pled the Fifth Amendment and refused to further testify. Because the prosecutor could no longer cross-examine Baker, Baker's testimony was stricken from the Record. In addition, Petitioner claims this was further complicated when the prosecutor refused to grant immunity to Baker.  Petitioner asserts this testimony should have been admitted as an admission or statement against interest, and that this argument was not considered in the Magistrate's analysis.

In support of his claim, Petitioner relies on *Chambers v. Mississippi,* 410 U.S. 284 (1973), and *Chia v. Cambra*, 360 F.3d 997 (9th Cir. 2004).  In *Chambers*, a state defendant attempted to offer

4

testimony that another person was responsible for the death he was being charged with, however this evidence was precluded under state evidentiary rules.  Although this testimony was hearsay, the Supreme Court ruled the exclusion of such evidence deprived defendant of his right to present a defense. It further held that when a hearsay statement bears "persuasive assurances of trustworthiness" and is critical to the defense, it may not be excluded by a "mechanistic" application of state hearsay rules.  *Chambers,* 410 U.S. at 302.  The Supreme Court also stated "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."  *Id.* at 295.

In *Chia*, the defendant tried to introduce a statement given by a co-defendant identifying the individual responsible for the crime, but the statement was excluded at trial and defendant was found guilty.  In *Chia*, 360 F.3d at 1003, the court declared:

> It is clearly established federal law, as determined by the Supreme Court, that when a hearsay statement bears persuasive assurances of trustworthiness and is critical to the defense, the exclusion of that statement may rise to the level of a due process violation. *Chambers,* 410 U.S. at 302, 93 S.Ct. 1038. "The Supreme Court has made clear that the erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense." *DePetris v. Kuykendall,* 239 F.3d 1057, 1062 (9th Cir.2001) (citing *Chambers,* 410 U.S. at 294, 93 S.Ct. 1038).

Finding that the trial court correctly identified *Chambers* as the governing legal rule but applied it to the facts of this case in an objectively unreasonable manner, the *Chia* court granted the writ.  It found the trial court's decision to exclude the statements without any reasonable basis was the kind of "mechanistic" application of state hearsay rules that *Chambers* forbids.

At first impression, *Chia* seems to support Petitioner's position.  However, there is an important distinction between the two cases.  In *Chia,* the exclusion of evidence served as a sanction for failing to identify a defense witness in response to a pretrial discovery request.  This is the type

5

of "mechanistic" application of hearsay rules identified in *Chambers*.  In Petitioner's case, the testimony was excluded because the witness invoked his Fifth Amendment right, thereby precluding cross examination.  As stated in *Taylor v. Illinois,* 484 U.S. 400, 410-411 (1988):

> The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case. The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony. Neither may insist on the right to interrupt the opposing party's case, and obviously there is no absolute right to interrupt the deliberations of the jury to present newly discovered evidence. The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence.

The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half truth.  *Id.* at 412.

In light of the clearly established law of *Taylor*, both the court of appeals and the Ohio Supreme Court denied Petitioner's relief, holding the trial court did not abuse its discretion in striking the testimony of witness Baker and prohibiting his testimony as a statement against interest.  In ruling on the merits, the court of appeals believed Baker's testimony was not a statement against interest because Baker testified without actually knowing the statements he was making were against his penal interests.  In fact, when the trial court appointed an attorney to represent Baker, he pled the Fifth Amendment, illustrating that he was no longer willing to accept total responsibility for the drug dealing.  Furthermore, the court of appeals pointed to the fact that Petitioner's counsel allowed Baker to take the stand, knowing that he would incriminate himself.  In addition, the court of appeals found Baker's statements to lack trustworthiness, due to the timing of the statement and Baker's relationship

6

to Petitioner.  Agreeing with this holding, the Court finds the ruling on admissibility was not an unreasonable application of clearly established federal law.

Petitioner also argues the trial court and prosecutor erred by failing to give Baker immunity from prosecution.  Immunity is the Government's ultimate tool for securing testimony that otherwise would be protected; unless immunity is conferred, testimony may be suppressed, along with its fruits, if it is compelled over an appropriate claim of privilege.  *United States v. Blue*, 384 U.S. 251, 255 (1966).  After a review of the Record, the Court agrees with the Magistrate's conclusions that "by the time the issue of immunity arose during the trial, testimony had already been elicited that Cyril Baker had taken an active part in completing the sale of drugs" and that "under these circumstances, the prosecutor had no legal or ethical duty to request immunity."  In the absence of Supreme Court cases holding that a prosecutor's failure to request immunity can be characterized as a deliberate effort to compromise the defense, Petitioner's writ is denied.

### 3.    *The Testimony of Detective Moran*

Petitioner objects to the Magistrate's conclusion that the testimony of Detective Moran was admissible.  Petitioner asserts the Record lacks evidence that anyone Detective Moran talked to was a drug dealer, and asserts the Record shows Detective Moran could not see the drug deal from his location.  The Court agrees with the Magistrate's conclusion that Detective Moran, an experienced police officer, is permitted to testify as both a fact witness and an expert witness pursuant to Ohio Evidence Rule 702. *State v. McKee,* 91 Ohio St. 3d 292, 295 (2001).

In this case, Detective Moran testified about the methods by which drug dealers operate and the significance of Petitioner's observed behavior with unknown males who appeared to be drug-dealers (Doc. No. 11, Ex. 24, pp. 177-180). In other words, Officer Moran testified as to "the general

practices of criminals to establish [Petitioner's] modus operandi," and was therefore admissible. *United States v. Vallejo*, 237 F. 3d 1008, 1016 (9th Cir. 2000); *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir. 1990). The Court adopts the Magistrate's recommendation and finds the testimony of Detective Moran about the methods employed by drug traffickers was proper.

### 4. *Alleged Prosecutorial Misconduct*

Petitioner alleges an assortment of conduct and comments made by the prosecutor during the trial that he believes constitute misconduct: (1) the prosecutor improperly inquired about Petitioner's prior convictions; (2) the prosecutor improperly inquired about Petitioner's lottery winnings; (3) the prosecutor improperly inquired about Petitioner's arrest on April 16, 2003; and (4) during closing argument, the prosecutor relied upon his opinion of Petitioner's guilt, misstated the evidence, and used passion and prejudice to appeal to the jury. Petitioner objects to the Magistrate's recommendation, alleging the recommendation does not accurately reflect the Record.

When reviewing claims of prosecutorial misconduct, the Court must first determine whether the statements were improper, and if so, whether they were flagrant and warrant reversal. *United States v. Tocco*, 200 F.3d 401, 420 (6th Cir. 2000). However, the Court will not overturn a verdict unless the prosecutorial misconduct is "so pronounced and persistent that it permeated the entire atmosphere of the trial, . . . or so gross as probably to prejudice the defendant." *Id.* at 421 (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).

### A.  Prior Convictions

Petitioner's first objects to the Magistrate's determination that evidence of Petitioner's prior convictions did not mislead the jury or prejudice Petitioner. Ohio Evidence Rule 609(A)(2) gives trial courts discretion in admitting evidence of prior felony convictions if the court determines the

8

probative value outweighs potential prejudice.   After reviewing the Record *de novo*, the Court adopts the Magistrate's conclusion and agrees that even if the trial court failed to specify on the Record the probative value of the prior convictions, the trial court instructed the jury that Petitioner's testimony could only be considered for purposes of assessing credibility and veracity (Doc. No. 11, Ex. 31, p. 441). Therefore, the prosecutor's statements regarding Petitioner's prior convictions were not improper, and did not render Petitioner's trial fundamentally unfair. *Koloda v. General Motors Parts Div., General Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983) (noting that unfair prejudice is not to be equated with testimony simply damaging or adverse to the opposing party, as virtually all evidence is prejudicial. The prejudice must be "unfair.").

     B.    <u>Lottery Winnings</u>

Petitioner next objects to the Magistrate's conclusion regarding cross-examination about lottery winnings.  During the course of his cross-examination, the prosecutor asked Petitioner about the source of $877 recovered on his person at the time of his arrest on April 16, 2003. Petitioner first responded he had won the lottery, but then later explained it came from gambling (Doc. No. 11, Ex. 28, p. 335). Petitioner alleges this amounted to prosecutorial misconduct and misled the jury because "it was improper to question petitioner by insinuating facts without proof" (Pet.'s Obj. 16).

The Record indicates the prosecutor offered Petitioner ample opportunity to explain what he meant by the term "lottery" (Doc. No. 11, Ex. 28, p. 353). Moreover, the prosecutor's inquiry regarding the lottery winnings was isolated and not mentioned again in his closing argument (Doc. No. 11, Ex. 28, p. 433) (prosecutor mentioned the April 16, 2003 arrest during closing argument, but he did not mention the lottery comment).   Consequently, the Court agrees with the Magisrate's

recommendation that the prosecutor's inquiry about the lottery winnings was not improper, did not taint the overall trial, and did not mislead the jury.

      C.     <u>Prior Arrest</u>

Petitioner alleges misconduct occurred during re-cross-examination when Petitioner was questioned about his arrest on April 16, 2003, in which he was not indicted and the case was dismissed.  Petitioner contends this evidence was improperly considered and presented to the jury. After reviewing the Record, the Court finds the cross-examination about Petitioner's prior arrest was within the scope of Ohio Evidence Rule 611(B).

Petitioner also objects to the Report and Recommendation because the Magistrate "glossed over" Petitioner's claim that the jury was never properly informed about the dismissal of Petitioner's prior arrest in August 2003 (Pet.'s Obj. 18).

Petitioner alleges the prosecutor committed misconduct when the prosecutor told the jury he did not know whether the April 16 arrest was dismissed, when, in fact, he knew the case was dismissed without prejudice due to a potential search and seizure issue. During cross examination of Petitioner, the following exchange took place (Doc. No 11, Ex. 29, p. 362):

Q.     Do you happen to know how many rocks they found?
A.     No, I do not.

Q.     Would a hundred sound about right?
A.     No, they threw the whole case out. I don't know.

Q.     A hundred rocks sound about right?
A.     I don't know sir.

Q.     You don't know. It don't sound wrong?
A.     I never went to court for the case. I never went to Court for it.

Q.     **I don't know where that case is sir.** Please answer my question. Would a hundred rocks sound about right?

10

This statement is not prejudicial to Petitioner, as it is ambiguous, and the prosecutor told the Court (outside the presence of the jury), only a few moments later that the case was dismissed without prejudice due to a potential search and seizure issue, but "that's not to say it's permanently dismissed, that's a mislead for the jury to see that" (Doc. No 11, Ex. 29, p. 364). Additionally, Petitioner's counsel had the opportunity to, and did, inform the jury during closing argument that the case involving the April 2003 arrest had been dismissed. The prosecutor's line of questioning concerning the details of the April 16, 2003 arrest was not improper, nor did it render Petitioner's trial fundamentally unfair. Therefore, the Court adopts the Magistrate's recommendation.

     D.    <u>Closing Argument</u>

Petitioner also objects to the Magistrate's conclusion that the prosecutor's closing statements were not improper. Petitioner contends the prosecutor committed misconduct during his closing argument because he: (1) relied upon his opinion of Petitioner's guilt; (2) misstated the evidence during closing; and (3) used passion and prejudice to appeal to the jury.

After reviewing the Record, the Court finds the prosecutor's statements that "my version is pretty simple because it's what happened, it's the truth. There's no magic here" went to the strength of the Government's proof, and are not improper. Had the prosecutor said something similar to, "my version is pretty simple because I know the defendant is lying," or "there's no magic here because the defendant's witnesses cannot be trusted," such comments may have been improper. *See United States v. Krebs*, 788 F.2d 1166, 1176 (6th Cir. 1986).

Petitioner next argues the prosecutor misrepresented the evidence by stating Detective Kimberly Rudolph "gave them two $20s because Mr. Perry said, Let's get out of here" (Doc. No. 11, Ex. 31, p. 429). However, the Court agrees with the Magistrate's conclusion that the prosecutor's

11

statement was not improper, nor misleading, as he merely paraphrased Detective Rudolph's testimony (*see* Doc. No. 11, Ex. 26, pp. 214-15). In addition, the prosecutor's statement is not similar to the statement made by the prosecutor in *Macias v. Makowski*, 291 F.3d 447 (6th Cir. 2002), the case relied upon by Petitioner. *Id.* at 453 (holding that the prosecutor acted improperly when he misstated that the key witness had not come forward until the day before trial, when the witness had actually come forward over two months before trial). Therefore, there was no misstatement of the evidence by the prosecutor during closing argument.

Petitioner also alleges the prosecutor made an improper appeal to passion, urging the jury to convict out of a sense of duty when the prosecutor stated, "the State of Ohio, however, is here to pursue justice," and that "justice is when you right a wrong" (Doc. No. 11, Ex. 31, 434).

These statements do nothing other than describe to the jury what his role as a prosecutor is, and articulate clearly established principles in our justice system. *See Lorraine v. Coyle*, 291 F. 3d 416, 445 (6th Cir. 2002) (a prosecutor's primary interest in a criminal prosecution is that "justice shall be done").

The Court agrees with the Magistrate's conclusion that Petitioner's allegations of prosecutorial misconduct were not so pronounced or persistent as to permeate the atmosphere of the trial, nor were they grossly prejudicial to the Petitioner. *Pritchett*, 117 F.3d at 964. Therefore, Petitioner is not entitled to habeas relief based on the alleged instances of prosecutorial misconduct.

### 5.     *Sufficiency of the Evidence*

Plaintiff objects to the Magistrate's conclusion that a reasonable jury could have found Petitioner guilty of possession and trafficking in drugs.  Petitioner believes a jury could not find guilt beyond a reasonable doubt based on the evidence presented to support these charges.  Specifically,

Petitioner claims: (1) there was insufficient evidence that Petitioner knowingly acquired, used or possessed the substance found on the rear floor of the car; and (2) the evidence did not establish the drugs found in the car was crack cocaine.

When reviewing the sufficiency of evidence in support of a jury verdict, this Court views the evidence in the light most favorable to the prosecution and gives the prosecution the benefit of all reasonable inferences from the testimony. Viewing the evidence in this manner, a jury verdict is supported by sufficient evidence if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) (emphasis in original; internal quotation marks and citations omitted).

To prove possession of drugs, the Government had to show Petitioner knowingly obtained, possessed, or used a controlled substance.  Ohio Rev. Code § 2925.11(A). Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."  Ohio Rev. Code § 2925.01(K).[1]

Contrary to Petitioner's assertion that there was nothing to connect him to the drugs, the Government offered testimony that Detective Rudolph gave a heavy-set man a marked $20 bill, and then watched the heavy-set man exchange items with Petitioner just before the heavy-set man returned to the car and gave her the rock of cocaine (Doc. No. 11, Ex. 25. p. 214).  The Government also offered testimony that the marked $20 bill was later found in Petitioner's possession.

---

[1]
*See also* Ohio Rev. Code § 2901.21(D)(1) ("Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession.").

13

Petitioner points to lack of fingerprint evidence, unknown location of one marked $20 bill, allegedly inconsistent testimony, and testimony as to implausible facts to show the cumulative evidence could not establish guilt beyond a reasonable doubt. However, when the evidence is viewed in a light most favorable to the Government, Detective Rudolph's testimony is sufficient for a rational trier of fact to conclude Plaintiff was in possession of the drugs beyond a reasonable doubt.

Petitioner also contends the evidence did not establish the contraband in Exhibit 1A was 14.2 grams of crack cocaine.  Two bags of contraband were admitted as evidence in Petitioner's trial. Exhibit 1A contained 14.22 grams of contraband, and Exhibit 1B contained .36 grams on contraband (Doc. No. 11, Ex. 28 pp. 272-73).  When the scientific examiner initially marked the bags, she marked both bags as "cocaine," not "crack cocaine" (*Id.* at 276).  However, at trial, the examiner testified Exhibit 1A was actually crack cocaine (*Id.* at 272-73).  This testimony is sufficient to allow a rational trier of fact to conclude the contraband was crack cocaine, when viewed in a light most favorable to the Government.

As explained in the Report and Recommendation, there was sufficient evidence of possession of crack cocaine to convict Petitioner, and his conviction was not an unreasonable determination of the facts as shown by the Record or contrary to clearly established federal law. Although there were inferences from the facts which could have resulted in a different outcome for Petitioner, the inferences the jury made, which were reasonable, resulted in Petitioner's conviction. Overall, it cannot be said the evidence was insufficient for a rational trier of fact to convict Petitioner.

### 6.    *Jury Instructions*

Petitioner argues the jury instructions were improper on a number of grounds: (1) the court singled out Petitioner when discussing the weight to be given to each witnesses' testimony; (2) the

14

court improperly instructed the jury on constructive possession; (3) the court used a "gist of the offense" language when describing purposefully; and (4) in defining reasonable cause, the court instructed the jury that Petitioner could be held criminally liable for negligence.  Petitioner objects to the Magistrate's recommendation, alleging the Magistrate did not fully consider his claims and his right to be a witness on his own behalf.

### A.    Singling Out Petitioner's Testimony

A trial judge may not single out one witness, or a number of witnesses, and discuss their credibility. *State v. Scott*, 26 Ohio St. 3d 92, 101 (1986). Petitioner contends the court told the jurors to weigh Petitioner's testimony in the same manner as the testimony of other witnesses, but added the caveat that the jurors should take into consideration Petitioner's interest in the outcome of the case. Petitioner argues this was improper. The relevant language is (Doc. No. 11, Ex. 30, p. 441):

> Just because he is the Defendant is no reason for you to disregard and set aside his testimony -- the weight it is entitled to receive, **taking into consideration his interest in the outcome of the case**, and apply to his testimony the same rules that you will apply to the testimony of all witnesses who appeared in this case.  (Emphasis added).

While recognizing that Petitioner had the right to testify in his own behalf, the statement by the court was not improper and does not entitle Petitioner to habeas relief. As decided by the Supreme Court, it is it not error for a trial court to "direct the attention of the jury to the interest which any witness may have in the result of the trial as a circumstance to be considered in weighing his testimony," and that, "a defendant in a criminal case, who testifies in his own behalf, is always an interested witness." *Reagan v. United States*, 157 U.S. 301, 304, 306 (1895) (trial court instructed the jury that "[t]he deep personal interest which [the defendant] may have in the result of the suit should be considered . . . in weighing his evidence and in determining how far or to what extent, if at all, it is worthy of credit.").

15

Therefore, the isolated remark about Petitioner's interest in the outcome of the case did not suggest his testimony was any less credible (for example, the court did not arbitrarily single out his testimony and denounce it as false), but rather merely suggested to the jury that it is a factor it may consider in weighing Petitioner's testimony. Moreover, the court also instructed the jury not to disregard Petitioner's testimony, and that the jury should apply to his testimony the same rules they will apply to the testimony of all other witnesses who appeared in the case. The Court, therefore, agrees with the Magistrate's conclusion and finds there was nothing improper about the instruction to the jury. *See Portuondo v. Agard*, 529 U.S. 61, 71 (2000).

B.     Constructive Possession

Petitioner argues the legislature specifically defined in Ohio Rev. Code § 2925.01(K) what is meant by possessed or possession, and by interjecting constructive possession, the court effectuated an amendment to the statute and the Indictment. It is therefore Petitioner's belief that the term "possession" under Ohio Rev. Code § 2925.01(K) means "actual possession" only.

The Court finds constructive possession is sufficient for a conviction of drug trafficking under Ohio Rev. Code § 2925.03. *State v. Williams*, 117 Ohio App. 3d 488, 492 (Ohio Ct. App. 1996). Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession. *State v. Wolery*, 46 Ohio St. 2d 316, 329 (1976). Therefore, the jury instructions properly represented the applicable law, without error, on constructive possession.

C.     Gist of the Offense Language

Petitioner argues the trial court used a "gist of the offense" language in defining "purposely", which was improper.  After reviewing the Record, the Court agrees with the Magistrate's conclusion.

16

The trial court provided adequate instructions on the essential element of purpose as defined by Ohio Rev. Code § 2901.22(A). *See State v. Sneed*, 63 Ohio St. 3d 3, 9 (1992) (trial court need not give the defendant's requested instructions verbatim, but may use its own language to communicate the same legal principles to the jury). Moreover, a "single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *State v. Price*, 60 Ohio St. 2d 136, 141 (1979) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-147 (1973)). In the context of all the instructions given to the jury, the court provided adequate instruction on the element of purpose.

> D.    Jury Instruction on "Reasonable Cause"

In defining reasonable cause, the court informed the jury (Doc. No. 11, Ex. 30, 452):

> You must consider the conduct of persons involved and decide if their acts and words and all the surrounding circumstances would have caused **a person of ordinary prudence and care to believe that Clarence Perry intended to sell or resell crack**. (Emphasis added).

Petitioner contends this language instructed the jury to use a negligence standard. However, it is clear the court did not instruct the jury to use a negligence standard; rather, the court described the degree of care which an ordinary and prudent juror should exercise in determining whether Petitioner had the intent to sell or resell crack cocaine. Therefore, the Court adopts the Magistrate's recommendation and finds Petitioner's objections regarding the jury instructions are without merit.

> *7.    Petitioner's Sentence*

In *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000), the Supreme Court held: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Subsequently, the Supreme Court clarified *Apprendi* in *Blakely v. Washington*, 542 U.S. 296, 303 (2004), holding the "statutory maximum" for *Apprendi* purposes is not the maximum sentence a judge

17

may impose after finding additional facts, but the maximum he may impose without any additional findings -- *i.e.,* "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* (where the judge sentenced the defendant to more than the statutory maximum because he acted with deliberate cruelty even though the defendant did not admit, nor did the jury find, that he acted with deliberate cruelty, the sentence violated the Sixth Amendment).

Under Ohio's sentencing scheme, courts may impose a prison term between two and eight years for a felony of the second degree and between six and twelve months for a felony of the fifth degree. Ohio Rev. Code §§ 2929.14(A)(2) and (A)(5). Petitioner was sentenced to six years for both felonies in the second degree and six months for the felonies in the fifth degree. However, at the time of Petitioner's sentencing, Ohio law presumptively favored the minimum sentence unless the judge found that certain aggravating factors were present. Ohio Rev. Code § 2929.14(B) ("the court shall impose the shortest prison term authorized for the offense . . . unless one or more of the following applies: (1) the offender . . . previously had served a prison term; (2) the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others"). Therefore, the maximum sentence which could be imposed without the finding of any additional facts was two years for a felony of the second degree and six months for a felony of the fifth degree. *See Shafer v. Wilson*, No. 1:06-CV-648, 2007 WL 315760, at *11, 27 (N.D. Ohio Jan. 30, 2007).

Petitioner argues he should not have received more than a minimum sentence because the judge improperly considered Petitioner's prior convictions and stated that "this sentence is appropriate because otherwise it would not punish you or protect the public, it would diminish the seriousness of the offense . . . not to mention that you take no responsibility for this, you show no remorse" (Doc.

No. 11, Ex. 32, p. 470). It is Petitioner's belief this amounted to unconstitutional judicial fact-finding in violation of *Blakely*.

It should first be noted that in *State v. Foster*, 109 Ohio St. 3d 1, 29 (2006), after examining Ohio's felony sentencing statutes in light of *Blakely*, the Supreme Court of Ohio severed the *Blakely*-offending portions, and eliminated all references to mandatory judicial fact-finding. The eliminated Sections included 2929.14(B), (C), (E)(4), (D)(2), (D)(3), 2929.19(B)(2) and 2929.41(A). *Foster*, 109 Ohio St. 3d at 29. Consequently, post-*Foster*, the statutory maximum authorized by the jury verdict is the top of the sentencing range for the crime of which the defendant is convicted. *Id.*; Ohio Rev. Code § 2929.14(A). The retroactivity of this holding, however, was limited to those cases on direct review. *Foster*, 109 Ohio St. 3d at 31. Petitioner's sentence was final on May 25, 2005 and *Foster* was decided almost a year later; therefore *Foster* is inapplicable.

Petitioner's sentence is subject to the holding in *Blakely* because Petitioner's sentence was still on direct review when *Blakely* was decided in June 2004. Therefore, the question before the Court is whether Petitioner's sentence is invalid because it violated the Constitutional principles articulated in *Apprendi* and *Blakely. Lawhun v. Jeffries,* No. 1:05cv2491, 2006 WL 1982869, at *5 (N.D. Ohio July 13, 2006).

A.    Petitioner's Prior Convictions

Although the trial court considered Petitioner's prior criminal record pursuant to Ohio Rev. Code § 2929.14(B)(1), a section subsequently severed as unconstitutional in *Foster*, this did not violate the Sixth Amendment under *Blakely*. *Apprendi*, 530 U.S. at 490; *United States v. Poole*, 407 F.3d 767, 777 (6th Cir. 2005) ("*Booker*'s holding, that the Sixth Amendment bars mandatory enhancements based on judicial fact-finding, does not apply to the 'fact of a prior conviction'").

19

Therefore, the trial judge's consideration of Petitioner's prior record was not unconstitutional judicial fact-finding.

      B.      <u>Protecting the Public, and Diminishing the Seriousness of the Offense</u>

Petitioner also argues that the following statement by the trial judge reflects impermissible fact-finding in violation of *Blakely* (Doc. No. 11, Ex. 32, p. 470):

> I feel that this sentence is appropriate because otherwise it would not punish you or protect the public, it would diminish the seriousness of the offense and the seriousness of your past criminal conduct, not to mention that you take no responsibility for this, you show no remorse.

While the consideration of Petitioner's previous prison terms were not a violation of *Blakely*, this statement during sentencing indicates the trial judge also based Petitioner's sentence on facts not admitted, stipulated to, or found by the jury, such as his lack of remorse.  Because Petitioner's six-year sentences for the second degree felonies were above the statutory maximum of two years, these factual findings are impermissible. *See Shahan v. Jeffries*, No. 2:06-cv-160, 2007 WL 1432042, at *1 (S.D. Ohio May 14, 2007); *Shafer,* 2007 WL 315760, at *11, *29; *Tanner v. Wolfe*, No. 2:05-cv-00076, 2007 WL 649960, at *2 (S.D. Ohio Feb. 23, 2007).

In the Government's Return of Writ (Doc. No. 11), the Government argues the state court's decision rejecting Petitioner's *Blakely* claim was not contrary to or an unreasonable application of federal law.  The Government contends that, in light of the "uncertainty," "confusion" and "conflicting opinions" in the wake of *Blakely*, Petitioner's sentence cannot be considered contrary to or an unreasonable application of federal law.  The Court finds this argument lacks merit and has been rejected by a number of courts in this Circuit. *See Emrick v. Wolfe*, No. 2:05-cv-1057, 2006 WL 3500005, at *1 (S.D. Ohio Dec. 5, 2006); *Tanner*, 2007 WL 649960, at *1-2.

While *Blakely* violations may sometimes be harmless error, to establish harmless error, the Government must "prove that none of the defendant's substantial rights have been affected by the error." *United States v. Oliver*, 397 F.3d 369, 381 (6th Cir. 2005).  "[A] remand for an error at sentencing is required unless we are certain that any such error was harmless -- *i.e.* any such error "did not affect the [trial] court's selection of the sentence imposed." *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (citing *Williams v. United States,* 503 U.S. 193, 203 (1992)).

Some courts have found similar *Blakely* violations in Ohio to be harmless error because after *Foster*, Ohio "sentencing judges are free to impose any sentence within the applicable statutory range without the need to make any specific judicial findings." *Leach v. Hudson*, No. 1:06CV638, 2007 WL 1115165, at *2 (N.D. Ohio April 13, 2007).  Prior decisions from this District have found that because a remand to the state court could result in the very same sentence imposed there is no prejudice to Petitioner, despite the fact the sentencing violated *Blakely*.  *See Leach*, 2007 WL 1115165, at *2 ("there is no reason to believe [the petitioner] would receive a more favorable sentence if the court grants his request for relief"); *Shafer*, 2007 WL 315760, at *11 ("because Ohio remedied its unconstitutional sentencing regime by making its guidelines advisory, there is no reason to believe the Petitioner would receive a more favorable sentence if the Court grants his habeas request for relief").

The Court, however, finds the reasoning in *Shahan*, 2007 WL 1432042, at *3, more persuasive.  The *Shahan* court held:

> [B]ecause more than one outcome is possible upon re-sentencing, basing harmlessness on an assumed certainty is flawed. It converts the concept of harmless error in this context into a doctrine of *always* harmless error. Such conversion is especially dangerous when, as here, the possibility of a different sentence must logically preclude any habeas court from saying for a *certainty* that the error is harmless.  (emphasis in original).

Similarly, this Court cannot be **certain** the trial judge's consideration of public safety and remorse did not affect Petitioner's sentence and therefore cannot say the error was harmless. *See Hazelwood*, 398 F.3d at 801. *Emrick*, 2006 WL 3500005, at *3 ("the record in this case fails to reflect that, absent unconstitutional fact findings, the trial court would impose the same sentence . . . this Court is unable to conclude that the *Blakely* error was harmless").

Based on the foregoing, Petitioner's sentence, imposed in violation of *Blakely*, was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Further, while the sentencing court may reimpose the same sentence upon remand, it equally may choose not to do so and, with Petitioner's freedom at issue, this Court is reluctant to find such error to be harmless.  The state court judge is in the best position to reevaluate the sentencing options applicable to this Petitioner.

### CONCLUSION

After conducting a *de novo* review of the portions of the Report and Recommendation objected to by Petitioner, the Magistrate's Report and Recommendation is hereby ADOPTED and AFFIRMED and Petitioner's claims are DISMISSED as to all sections except those relating to the *Blakely* violation.  The petition for a writ of habeas corpus is CONDITIONALLY GRANTED as to Petitioner's claim that his sentence violated *Blakely* and the State of Ohio is directed to re-sentence Petitioner within ninety (90) days or release him.

IT IS SO ORDERED.

_____s/ *Jack Zouhary*_____
JACK ZOUHARY
U. S. DISTRICT JUDGE

July 31, 2007

22